## GLOBE-WERNICKE CO. v. UNITED STATES.

### No. M-185.

Court of Claims.

Nov. 5, 1934.

William P. Smith, of Washington, D. C., for plaintiff.

James A. Cosgrove, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This is a suit to recover income and profits taxes for the calendar year 1918 in the amount of $6,731.26 by reason of the refusal of the Commissioner of Internal Revenue to allow a deduction in the amount of $8,169 as part of the depreciation sustained and deducted by the taxpayer during the current year on its dies and tools.

A decision in this case requires an examination of the exceedingly complicated accounts. It would be impracticable to set out all of the data upon which we base our final conclusions. Counsel for plaintiff claims that its books, which were kept on a calendar year basis, show that the Commissioner should have allowed $8,169 more as a deduction for depreciation on dies and tools for the year in controversy. But these entries are not conclusive upon the defendant as to the matter of depreciation. At most they are merely presumptive evidence thereof, and we think that, where merely an estimate based upon an opinion is entered, there is no presumption as to its being correct. In the case now before us the distinction is not important, as we find that the evidence taken as a whole is sufficient to overthrow any presumption and that it devolves upon the plaintiff to show by something more than book entries of this kind that the Commissioner's determination was incorrect and also what the correct amount of depreciation was.

Our examination of the record and accounts leads us to the conclusion that no satisfactory evidence has been introduced to show what the true depreciation on account of dies and tools was for the year 1918. The complications in the case result in part from the fact that, while the return for the year 1918 was made on the calendar year basis, plaintiff took its physical inventories on May 31st. For the year 1918, plaintiff filed a consolidated return for itself and an affiliate on May 15, 1919, in which it claimed $8,169 depreciation on dies and tools. On April 30, 1920, the plaintiff filed an amended return for the same year with the same amount deducted for depreciation on dies and tools as shown in the original return. On August 14, 1923, the plaintiff filed a brief and claim in abatement in which there was requested an adjustment of the depreciation on dies and tools from $8,169 to $50,028.35, being an increase in the depreciation claimed thereon of $41,859.35. March 10, 1924, the Commissioner made an additional assessment of taxes for 1918 amounting to $211,024.70, and shortly after the plaintiff filed a claim in abatement of the whole amount of the additional assessment. Later the plaintiff submitted a further brief and claim in abatement covering its taxes from 1917 to 1920, inclusive. On November 21, 1925, the Commissioner notified plaintiff by letter that its consolidated income tax for 1918 had been redetermined to be $449,473.43, and that a certificate of overassessment for $30,631.18 would be issued. The Commissioner's letter showed that the deductions allowed on account of depreciation were increased by $24,087.08 which, as the findings show, had the effect of allowing an increase in the depreciation on dies and tools from $8,169 to $50,028.35, or an increase of $41,859.35. Plaintiff was not satisfied with this allowance, claiming that an additional $8,169 should be allowed for 1918. Further proceedings were had in the course of which a conference was held between the plaintiff and the officials of defendant, and a statement called a "letter of protest" was filed by plaintiff which was in substance an argument intended to show that the additional $8,169 should have been allowed. This contention was based wholly on what was shown by plaintiff's books. No evidence was or is now produced to show that the book entries with reference to depreciation were correct except that some of them appear to have been based upon the inventories; others, so far as the record shows, were merely the entry of an opinion as to the amount.

As before stated, plaintiff's books were kept on a calendar year basis, but the dies and tools asset account was adjusted on May 31st of each year to accord with the physical inventory which it was customary to make on that date.

Plaintiff's books show the following deductions on dies and tools for 1918:

Jan. 1, 1918, to May 31, 1918....$ 7,168.00
Jan. 1, 1918, to May 31, 1918..... 25,000.00
May 31, 1918.................... 14,360.35
June 1, 1918, to Dec. 31, 1918.... 11,669.00

Total charged to manufacturing exp. on books.........$58,197.35

The item of $7,168 was an estimate of the depreciation for the date set out. The item of $25,000 is referred to as "burden" on the books. This $25,000 had previously been debited to manufacturing expense, and the evidence is not satisfactory as to why it was changed to a deduction on dies and tools for the calendar year 1918. As we understand the argument for plaintiff, it assumes that

this $25,000 was added to make the deductions correspond with the inventory taken on May 31, 1918. But, even if it be conceded that this entry showed a proper deduction for the inventory year, it was a deduction for the whole inventory year, the greater part of which was included in the year 1917. We find no satisfactory evidence to show that all of this $25,000 ought to have been deducted for the calendar year 1918. In fact, we think that the evidence tends to show to the contrary and that there is a lack of evidence to show that all of the last three items mentioned above, totaling $46,528.35, were properly deductible in the first five months of 1918. It would seem that the fact that for the remaining seven months of the year only $11,669 is deducted tends to show that the deductions previously made in the year 1918 were incorrect. There is no satisfactory evidence to show how much of this $46,528.35 should be deducted for the calendar year 1918. Apparently the plaintiff at first estimated a deduction of $7,168 from January 1 to May 31. Then on May 31st $25,000 more was charged, and on the same day $14,360.35 additional to make the books accord with the physical inventory. We think it clear that for depreciation purposes the last amount should have been spread over the whole of the inventory year instead of being deductible in its entirety as a depreciation for the calendar year 1918. It should also be noted that the other items are merely estimates.

It will be observed also that changes in the form of additions were made to the book entries and that the plaintiff from time to time raised the amount of its claim for depreciation on dies and tools. In the return first filed it claimed $8,169. The same claim was made in its second return. In the brief and claim in abatement first filed by plaintiff it asked that the depreciation on dies and tools be increased from $8,169 to $50,028.35, and following a claim for additional depreciation of $27,306.33 on other items than dies and tools, this additional depreciation was allowed, which, as before stated, had the effect to increase the depreciation on dies and tools from $8,169 to $50,028.35. In the brief filed August 14, 1923, in which the adjusted depreciation claimed on dies and tools was stated at $50,028.35, it was said: "The original deductions in respect to dies and small tools represented actual losses which were written off annually in conformity with physical in-

ventories, therefore no adjustment has been made or required in respect to such items."

In the same brief a further reference was made to the item of $8,169 as a reserve for depreciation applying on dies and tools, with the same explanation as quoted above.

It will be seen from what has been stated above and the findings that on August 14, 1923, the plaintiff claimed a depreciation on dies and tools of $50,028.35, and the Commissioner, in 1925, in accordance with plaintiff's request, raised the allowance for depreciation from $8,169 to $50,028.35. It was not until October 21, 1926, that the plaintiff filed a statement claiming an additional $8,169 as depreciation on dies and tools for 1918 which, as the findings show, would make an aggregate of $58,197.35 for depreciation on dies and tools for the year 1918. The evidence fails to show that this was the correct amount of depreciation, and therefore plaintiff's claim cannot be sustained.

On August 16, 1930, the plaintiff filed a formal claim for refund on the ground, among others, that $8,169 depreciation on dies and tools was erroneously disallowed. Attached to this claim was a sworn brief which set forth in detail the basis of plaintiff's claim for this additional depreciation and stating that the formal claim thus filed was for the purpose of securing action on its informal claim contained in the brief theretofore filed. This claim was rejected. As it was filed after the statute of limitations had run, it would have no force and effect except as an amendment to a prior claim. Plaintiff insists that a prior informal claim was filed as to which this formal claim may properly be considered an amendment. On defendant's part it is urged that the sworn statement of October 21, 1926, did not constitute an informal claim for refund of taxes of 1918.

If we were to concede that plaintiff's position is well taken, the refund could not be allowed unless there was proof that there had been in fact an overpayment. In our opinion, as stated above, such proof is lacking. It therefore is not necessary to pass on the question of the sufficiency of the claim for refund.

It follows that plaintiff's petition must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WHALEY, WILLIAMS, and LITTLETON, Judges, concur.